EXHIBIT
#4



**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**

*Attorneys at Law*

International Place Tower II
6410 Poplar Avenue, Suite 300
Memphis, TN 38119
Telephone: 901-767-6160
Facsimile: 901-767-7411
www.ogletree.com

M. Kimberly Hodges
901.766.4306
kim.hodges@ogletree.com

May 20, 2022

**VIA EEOC RESPONDENT PORTAL**
Chris Stafford, Investigator
U.S. Equal Employment Opportunity Commission
Memphis District Office
1407 Union Avenue, Suite 900
Memphis, TN 38104

      RE:    **Charging Party:**    **Marvin Foster**
             **Respondent:**    **Rite Hite Products Corporation**
             **EEOC Charge No.:**  **846-2021-26325**

Dear Investigator Stafford:

    Respondent Rite Hite Products Corporation (hereinafter, "Rite Hite" or "Respondent") submits this statement of position in response to the allegations of discrimination, harassment, and retaliation contained in the above-referenced charge. This position statement is submitted to you as Respondent's discussion of the merits of this charge for the purpose of any future conciliation or conference regarding this matter. It does not constitute an affidavit or admission of any kind and is not intended to be used as evidence in any future court proceeding, if any. Respondent does not waive any defenses, whether substantive or procedural, it may have to the charge. All such defenses are expressly reserved. Respondent likewise does not waive any objection to the admissibility, materiality, or relevancy of any information or material submitted to the Commission by any Party.

    Charging Party alleges in the body of his complaint that he was harassed based on his age, and subsequently terminated for a pretextual reason after he complained to Respondent's Human Resources office. Respondent denies Charging Party's allegations. As set forth below, there is no factual or legal basis for Charging Party's claim, and his Charge should be dismissed.

**I.    BACKGROUND**

    Rite Hite is a corporation engaged in the manufacture of loading dock safety equipment, as well as the sale and service of industrial doors, safety barriers, HVLS fans, industrial curtain

Atlanta ▪ Austin ▪ Berlin (Germany) ▪ Birmingham ▪ Boston ▪ Charleston ▪ Charlotte ▪ Chicago ▪ Cleveland ▪ Columbia ▪ Dallas ▪ Denver ▪ Detroit Metro ▪ Greenville ▪ Houston ▪ Indianapolis ▪ Jackson ▪ Kansas City ▪ Las Vegas ▪ London (England) ▪ Los Angeles ▪ Memphis ▪ Mexico City (Mexico) ▪ Miami ▪ Milwaukee ▪ Minneapolis ▪ Morristown ▪ Nashville ▪ New Orleans ▪ New York City ▪ Orange County ▪ Philadelphia ▪ Phoenix ▪ Pittsburgh ▪ Portland ▪ Raleigh ▪ Richmond ▪ St. Louis ▪ St. Thomas ▪ Sacramento ▪ San Antonio ▪ San Diego ▪ San Francisco ▪ Seattle ▪ Stamford ▪ Tampa ▪ Toronto (Canada) ▪ Torrance ▪ Tucson ▪ Washington

Ex 4 p1

Chris Stafford, Investigator
Charge No. 846-2021-26325
Page 2 of 6

walls, and others. These materials are designed to assure safety, security, productivity, energy savings, and environmental control for Rite Hite's customers. The Horn Lake facility where Charging Party was employed produces products designed to address dock leveling and vehicle restraints.

Rite Hite has explicit, robust policies prohibiting harassment, discrimination, and retaliation in the workplace. These policies are contained in the Employee Handbooks and presented to new hires during on-boarding. Regardless of an employee's length of tenure with Rite Hite, these policies are readily accessible through the Human Resources Information System.

II.   **RELEVANT FACTS**

Charging Party began his employment with Respondent on or about July 2, 2018 as an entry-level welder. He was interviewed and promoted to a Quality Auditor on or about January 21, 2019. During his time in the Quality Auditor role, Charging Party reported to the Quality Manager, Jackie Dunson ("Ms. Dunson"), and began exhibiting problematic behavior in the workplace, including difficulty communicating in a professional manner, and refusal to follow instructions issued by Ms. Dunson.

Based on these problems, Charging Party was put on a Performance Improvement Plan (PIP) on or about May 3, 2020, for a period of eight weeks. **Exhibit A** (M. Foster PIP 5.3). While he was on the PIP, Charging Party met with Ms. Dunson on a weekly basis to address the needed improvements and review his progress in meeting expectations. Charging Party was explicitly told during the PIP process that if he failed to show and maintain meaningful change to his prior behavior, he would be subject to further corrective action up to and including termination. Fortunately, Charging Party was able to reform his behavior, and was retained at the completion of the PIP.

Less than a year later, on or about March 8, 2021, Charging Party was again promoted to a Production Trainer position. This put him in a role crucial to training newly hired employees on Respondent's manufacturing lines. As with all promotions, Charging Party was put on a training and probationary period to allow for continuous assessment for an employee's suitability in a new role. Here, Charging Party reported to Ms. Jada Meeks ("Ms. Meeks"), and again began demonstrating unsatisfactory communications, a combative attitude, and refusal to follow instructions issued by Ms. Meeks as his supervisor. His general demeanor was further exhibited in his belligerent interactions with his peers, including incidents of yelling, huffing, derogatory statements and coarse language. Respondent considers these actions and attitude unacceptable in its work space, and communicated this to Charging Party on April 6, 2021 in a written warning. **Exhibit B** (M. Foster Written Warning). Ms. Meeks met with Charging Party on multiple occasions between the date of his promotion and April 8, 2021, where she advised him of the need to follow instructions, receive constructive feedback, and improve his communication in both content and quality, or risk the consequences. **Exhibit C** (Performance Log).

Charging Party refused to take Ms. Meeks' advice, and persisted in his negative outlook and insubordinate communications. Charging Party attempted to go around Ms. Meeks to

Ex 4 p 2

Chris Stafford, Investigator
Charge No. 846-2021-26325
Page 3 of 6

communicate his opinion of the training program to Respondent's Vice President of Manufacturing. This was even after Charging Party was reminded that the proper course of action would be for him to communicate his concerns to Ms. Meeks, as his supervisor, and she would then pass them on to upper management for consideration. At least three (3) reports reached Respondent's Human Resources office that Charging Party began referring to Ms. Meeks derogatorily and as "a bitch": "dumb bitch," "this bitch just won't listen," and "she is not qualified and will not last long at Rite Hite," among others. **Exhibit D** (Gary Clayton Statement), **Exhibit E** (Termination Letter).

Respondent provides a robust mechanism for employees to report harassment and discrimination in its EEO/Affirmative Action Policy:

> Any employee who believes that he or she has been the subject of any form of discrimination by anyone at Rite-Hite or by any person who does business with Rite-Hite or who has witnessed discrimination should immediately report the matter to anyone of the following: their immediate supervisor, a supervisor, Chief Human Resources Officer, Chief Legal and Compliance Officer, or the President of the employee's Operating Company.

In spite of the existence and ready availability of this procedure, Respondent has never received any reports, complaints, or communications from Charging Party that he was receiving harassing treatment concerning his age. Respondent likewise prohibits retaliation in this same policy, and undertakes prompt investigations upon receiving reports of prohibited conduct.

Charging Party demonstrated a pattern of ongoing violations of Respondent's standards of conduct and harassment policies, insubordination, improper and substandard communications, and an aggressive attitude when confronted or offered corrective action during his employment with Respondent. He was terminated for these reasons on or about April 8, 2021. **Exhibit E** (Termination Letter).

### III. LEGAL ANALYSIS

#### a. Age-Based Harassment

Charging Party may advance a claim for harassment based on his age under the ADEA by establishing four elements of a *prima facie* case: (1) he was over the age of 40; (2) the employee was subjected to harassment, either through words or actions, based on age; (3) the nature of the harassment was such that it created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer. *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435 (5th Cir. 2011).

Here, Charging Party cannot establish a prima facie case of age-based harassment. While he was over the age of 40, Respondent denies that Charging Party was subjected to harassment based on his age. Charging Party never communicated such conduct to management during his

Ex 4 p 3

Chris Stafford, Investigator
Charge No. 846-2021-26325
Page 4 of 6

employment with Respondent, and any form of harassment or discrimination violates Respondent's Standards of Conduct and EEO/Affirmative Action Policy.

Nor can Charging Party establish the third or fourth elements of this most basic showing. Even if Respondent had experienced harassment as claimed in his Charge of Discrimination, it does not meet the definition of "an objectively intimidating, hostile, or offensive work environment." Similarly, Nothing in Charging Party's allegations, or the facts provided herein, establish any basis for liability against Respondent.

A workplace environment is hostile when it is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment." *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009). Moreover, the complained-of conduct must be both objectively and subjectively offensive. *EEOC v. WC&M Enters.*, 496 F.3d 393, 399 (5th Cir. 2007). This means that not only must a complaining party perceive the environment to be hostile, but it must appear hostile or abusive to a reasonable person. Id. To determine whether conduct is objectively offensive, the totality of the circumstances is considered, including: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance." *Id.*

Charging Party offers a bare statement to substantiate his claim for age discrimination that he was "constantly referred to as an old man by management." He does not identify a specific person or any date on which this comment was uttered, and his charge notes that the earliest date of discrimination was April 8, 2021. This allegation does not rise to the level of a hostile or harassing environment as defined above. While it is alleged as a frequent utterance, it is not "severe," nor is it physically threatening or humiliating, and Charging Party has not claimed that the statement interfered with his work performance. Absent these additional indicators, Charging Party cannot claim that an offensive statement results in an environment that a reasonable person would find abusive, or that the environment is "permeated" with discriminatory intent.

Comparing Respondent's factual assertions in the above sections to Charging Party's bare allegations, it is clear that he cannot establish this prima facie case of age-based harassment, and his Charge should be dismissed.

 b. **Retaliation**

Claims of retaliation under the ADEA are analyzed under the *McDonnell-Douglas* framework, identically to those brought under Title VII. *Hackett v. United Parcel Service*, 736 Fed. Appx. 444, 452 (5th Cir. 2018). To establish a *prima facie* retaliation claim under the ADEA, a plaintiff "must show (1) that he engaged in a protected activity, (2) that there was an adverse employment action, (3) that a causal link existed between the protected activity and the adverse employment action, and (4) he was qualified for the position." *Holtzclaw v. DSC Communs. Corp.*, 255 F.3d 254, 259 (5th Cir. 2001). As above, the burden of production shifts to defendant to articulate a legitimate, non-retaliatory reason for its employment decision ***only if*** the employee meets this minimum showing. *Id.* Once the employer meets its burden, the employee must

Ex 4 p 4

Chris Stafford, Investigator
Charge No. 846-2021-26325
Page 5 of 6

demonstrate that the defendant's explanation is a pretext for unlawful retaliation. *Septimus v. Univ. of Houston*, 399 F.3d 601, 607 (5th Cir. 2005); *see also Turner v. St. Luke's Episcopal Health Sys.*, No. H-06-1668, 2008 WL 706709, at *15 (S.D. Tex. March 14, 2008)(emphasis added).

Similar to his harassment claim, Charging Party cannot establish a *prima facie* case of retaliation, for several reasons. Here, there is no causal link between his protected activity and his termination, and he was not qualified for the position from which he was terminated. It is well established that close temporal proximity between a protected activity and a subsequent adverse action, without more, is insufficient to support a finding of causality. *Everett v. Cent. Miss., Inc. Head Start Program*, 444 F. App'x 38, 46 (5th Cir. 2011) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001)). *See also Clark Cnty. Sch. Dist.*, 532 U.S. at 273, 121 S. Ct. 1508; *Fanning v. Metro. Transit Auth.*, 141 F. App'x 311, 314 (5th Cir. 2005)

In the body of his Charge, Charging Party does not specify *when* he allegedly complained "several times" to Respondent's Human Resources office, but that he was terminated on April 8, 2021. This is insufficient to determine temporal proximity between the two events, and provides no evidence of other indicia of discrimination that would bolster Charging Party's claim. As stated above, Respondent has received no complaints, reports, or communications from Charging Party substantiating his claim of age-based harassment, despite having a substantial reporting mechanism and explicit prohibition on retaliatory conduct.

Moreover, Charging Party was unqualified for the position from which he was fired. His employment record with Respondent shows that he was awarded two promotions during his tenure, but began exhibiting inappropriate behavior and an unacceptable attitude in the workplace immediately after both upgrades. Regardless of the role occupied, a qualified employee will possess both technical knowledge and mastery of interpersonal skills. A lack in either sphere opens an employee to corrective action, and consistent, willful noncompliance can result in termination.

After he was promoted to Quality Auditor, Charging Party displayed a habitually negative demeanor, regularly interrupted his supervisor during meetings and coaching sessions, and categorically refused to follow instructions, whether they concerned his work in his new role, or obeying the chain of command in communications. Charging Party was put on a performance improvement plan to address his numerous deficiencies in these areas on or about May 4, 2020, and successfully completed the plan and modified his behavior, albeit with a warning that continued poor behavior and work performance would subject him to further corrective action up to and including termination.

After his elevation to Production Trainer in March 2021, Charging Party began exhibiting this unacceptable behavior once more. Despite qualification based on his technical skills, Charging Party's "soft skills" fell well short of the requirements for his new role. He was issued a written warning on April 6, 2021, reminding him that he was still in his probationary period for his new role, identifying numerous disconcerting deficiencies to be corrected immediately, and warning that further displays of insubordination, negativity, and combativeness would result in

Ex 4 p5

Chris Stafford, Investigator
Charge No. 846-2021-26325
Page 6 of 6

termination. Charging Party refused to alter his behavior in accordance with this warning, and was terminated on April 8, 2021.

While Charging Party cannot meet his prima facie burden, Respondent asserts that his termination is based on a legitimate, nondiscriminatory reason: poor interaction with peers and supervisors, insubordination, failure to follow instructions, and repeated violations of Respondent's personnel policies. Charging Party did not demonstrate improved behavior and attitude as required during his probationary period after his promotion to Production Trainer and written warning, and was therefore terminated on these bases.

Notably, Charging Party asserted that the conflict between himself and his supervisor was a matter of "his personality," rather than any protected category such as his age. Charging Party was also reprimanded on a number of occasions for improper sex-based and condescending comments to Ms. Meeks, including (1) asking her when she was going to come out onto the production floor as a "decoration" for the production employees, (2) insisting that Ms. Meeks was "just being sensitive" when she asked he ceased such inappropriate comments, (3) that it was "not [Ms. Meeks'] fault she did not understand, and (4) an insistence that he "saw her as his family." These comments were made between March 2021 and Charging Party's termination on April 8, 2021.

It is clear that Charging Party cannot establish a claim for retaliation under the ADEA, as he cannot show a causal connection between his alleged reports, nor can he establish that he was qualified for his position. Respondent contends his termination was predicated on legitimate, nondiscriminatory reasons, and requests that this Charge be dismissed.

IV. **CONCLUSION**

In summary, Charging Party's allegations of age-based harassment and retaliatory discharge have no merit, and his charge should be dismissed. Please contact me if you wish to discuss any of the above material or require any additional information.

Sincerely,

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P. C.

M. Kimberly Hodges

MKH/amg
Enclosures *(Confidential Exhibits A-E)*

Ex 4 p 6

51605043 v1 OGLETREE